## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD PLUMMER, | ) | |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | Cause No. 1:13-cv-08253 |
| | ) | |
| HOWARD A. PETERS, | ) | |
| Director IDOC from 1991 to 1995 | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| ODIE WASHINGTON, | ) | |
| Director IDOC from 1995 to 1999 | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| DONALD N. SNYDER, JR., | ) | |
| Director IDOC from 1999 to 2003, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| ERNESTO VELASCO, | ) | |
| Director IDOC from February 2003 to March 2003, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| ROGER E. WALKER, JR., | ) | |
| Director IDOC from 2003 to 2009, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| GEORGE WELBORN, | ) | |
| Warden Menard Correctional Facility, 1990 to 1994, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| TOM PAGE, | ) | |
| Warden Menard Correctional Facility, 1994 to 1999, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| KEITH NELSON, | ) | |
| Warden Dixon Correctional Facility, 1995 to 1996, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| LaMARK CARTER, | ) | |
| Warden Dixon Correctional Facility, 1996 to 1997, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| TOM ROTH, | ) | |
| Warden Dixon Correctional Facility, 1997 to 1999, | ) | |

in his individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JERRY STERNES,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Warden Dixon Correctional Facility, 1999 to 2004,⠀)
in his individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
NEDRA CHANDLER,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Warden Dixon Correctional Facility, 2004 to 2014,⠀)
in her individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNKNOWN PSYCHOLOGISTS,⠀⠀⠀⠀⠀)
Menard Correctional Facility from 1991 to 1995,⠀⠀)
in their individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNKNOWN PSYCHIATRISTS,⠀⠀⠀⠀⠀)
Menard Correctional Facility from 1991 to 1995,⠀⠀)
in their individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNKNOWN PSYCHOLOGISTS,⠀⠀⠀⠀⠀)
Dixon Correctional Facility from 1995 to 2007,⠀⠀)
in their individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNKNOWN PSYCHIATRISTS,⠀⠀⠀⠀⠀)
Dixon Correctional Facility from 1995 to 2007,⠀⠀)
in their individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
PETER SWIRE, the administrator of the Estate of⠀)
DR. JOHN DORN,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Staff psychiatrist at Dixon in 2006,⠀⠀⠀⠀⠀⠀)
in his individual and official capacities,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
STATE OF ILLINOIS,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

## SECOND AMENDED COMPLAINT

Plaintiff Edward Plummer, for his complaint against Defendants Howard A. Peters, Odie Washington, Donald N. Snyder, Jr., Ernesto Velasco, Roger E. Walker, Jr., George Welborn, Tom Page, Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes, Nedra Chandler, Unknown Psychologist at the Menard Correctional Facility from 1991 through 1995, Unknown Psychiatrist at the Menard Correctional Facility from 1991 through 1995, Unknown Psychologist at the Dixon Correctional Facility from 1996 through 2007, Unknown Psychiatrist at the Dixon Correctional

Facility from 1996 through 2007, Peter Swire, the administrator of the Estate of Dr. John Dorn, the Illinois Department of Corrections, the Dixon and Menard Correctional Facilities, and the State of Illinois, states as follows:

## INTRODUCTION

1.     This is an action for money damages, declaratory and injunctive relief brought pursuant to 42 U.S.C. §§ 1983 and 1988; the Eighth Amendment to the United States Constitution; the Fourteenth Amendment to the United States Constitution; Article I, Section 2 of the Illinois Constitution; and Article I, Section 11 of the Illinois Constitution against Howard A. Peters, Odie Washington, Donald N. Snyder, Jr., Ernesto Velasco, Roger E. Walker, Jr., George Welborn, Tom Page, Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes, Nedra Chandler, Unknown Psychologist at the Menard Correctional Facility from 1991 through 1995, Unknown Psychiatrist at the Menard Correctional Facility from 1991 through 1995, Unknown Psychologist at the Dixon Correctional Facility from 1996 through 2007, Unknown Psychiatrist at the Dixon Correctional Facility from 1996 through 2007, Peter Swire, the administrator of the Estate of Dr. John Dorn, the Illinois Department of Corrections, the Dixon and Menard Correctional Facilities, and the State of Illinois.

2.     Plaintiff alleges that Defendants (named above) deprived him of his right to be free from cruel and unusual punishment when the Defendants subjected him to long-term sensory deprivation by placing him in solitary confinement.

3.     Plaintiff alleges that Defendants (named above) deprived him of his right to be free from cruel and unusual punishment when the Defendants injected him with psychotropic drugs without just cause as a punishment, then withheld documents to which he was legally entitled.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has

supplemental jurisdiction of Plaintiff's cause of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

5.    Venue lies in the United States District Court of the Northern District of Illinois because at least one of the defendants resides in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in prisons located in the Northern District of Illinois.  28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## PARTIES

6.    Plaintiff Edward Plummer is an adult citizen and resident at 6030 S. Morgan, Chicago, Illinois.

7.    Defendant Howard A. Peters was the Director of the Illinois Department of Corrections from 1991 to 1995.   He is sued in his individual and official capacities.

8.    Defendant Odie Washington was the Director of the Illinois Department of Corrections from 1995 to 1998.   He is sued in his individual and official capacities.

9.    Defendant Donald N. Snyder, Jr. was the Director of the Illinois Department of Corrections from 1999 to 2003.   He is sued in his individual and official capacities.

10.    Defendant Ernesto Velasco was the Director of the Illinois Department of Corrections from February 2003 to March 2003.   He is sued in his individual and official capacities.

11.    Defendant Roger E. Walker, Jr. was the Director of the Illinois Department of Corrections from 2003 to 2009.   He is sued in his individual and official capacities.

12.    Defendant George Welborn was the warden of the Menard Correctional Facility from 1990 to 1994.   He is sued in his individual and official capacities.

13.    Defendant Tom Page was the warden of the Menard Correctional Facility from 1994 to 1999.   He is sued in his individual and official capacities.

14.    Defendants Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes and Nedra Chandler were the wardens of the Dixon Correctional Facility from 1996 to 2007.   They are sued in their individual and official capacities.

15.    Unknown Psychologist of the Menard Correctional Facility from 1991 through 1995 is an employee of the IDOC.  He is licensed to practice psychology in the State of Illinois.  He is sued in his individual and official capacities.

16.    Unknown Psychiatrist of the Menard Correctional Facility from 1991 through 1995 is an employee of the IDOC. He is licensed to practice psychiatry in the State of Illinois.  He is sued in his individual and official capacities.

17.    Peter Swire, the administrator of the Estate of Dr. John Dorn.  Dr. Dorn was an employee of the IDOC in 2006.  He was licensed to practice psychiatry in the State of Illinois.  His estate is sued in its individual and official capacities.

18.    The Illinois Department of Corrections is a necessary party.

19.    The Menard and Dixon Correctional Facilities, and the State of Illinois are necessary parties.

## BACKGROUND

20.    On December 31, 1987, the Plaintiff was arrested for the murder of a convenience store employee.  He was subsequently tried, found guilty, and sentenced to 60 years in prison.  That sentence was later reduced to 40 years because nothing was taken from the store during the incident.

21.    On October 16, 1989, the Plaintiff was sent to the Menard Correctional Facility to begin serving his sentence.

22.    Plaintiff was transferred to the Stateville Correctional Facility in 1990.  At Stateville, Plaintiff enjoyed several familial visits.  During these visits, the Plaintiff was in good health physically and mentally.  (Exhibit 1)

23.    The Plaintiff was transferred back to the Menard in approximately 1991.  During this stay at Menard, the Plaintiff was given psychotropic drugs.  (Exhibit 31)

24.    The Plaintiff's family visited him in 1992, and discovered that the Plaintiff was in the hole shackled.  The Plaintiff was allowed no familial contact.  (Exhibit 1)

25.    The Plaintiff began "acting funny" in around 1995.  His letters home became disjointed and rambling.  (Exhibit 1)

26.     The Plaintiff's mother wrote Menard several times requesting that Plaintiff be transferred to a facility closer to Chicago, because she had disabilities that made it difficult for her to travel to Menard.

27.     In around 1996 to 1997, the Plaintiff was transferred to the Dixon Correctional Facility.  The Plaintiff's mother attempted to visit him three times at Dixon, but each time, she was informed that the Plaintiff refused to see her.  (Exhibit 1)

28.     The Plaintiff informed his mother by phone that he was being force-medicated at Dixon.  These calls took place in around 1996 to 1997.  (Exhibit 1)

29.     The Plaintiff was transferred to the psychiatric ward while at Dixon.  (N.B.  The plaintiff requested all his medical records from Dixon and Menard in May of 2012.  (Exhibits 2 and 3)  Dixon provided him with records with a beginning date of January 12, 2004.  Menard informed him that his records were all at Dixon.  (Exhibit 3))

30.     The first document Dixon provided to the plaintiff was an Enforced Medication Update.  Plaintiff was diagnosed with schizophrenia.  (Exhibit 4) (N.B.  The misdiagnosis of schizophrenia in the African American population is a common problem among mental health providers.  (Exhibit 5))

31.     From January 12, 2004, until May 27, 2004, the plaintiff's medication was 15 mg. of Zyprexa at 6:00 p.m.  (Exhibits 4, 6 and 7)   However, the plaintiff's enforced medication update dated June 20, 2004, indicates that Dr. Joy O. Urubusi added 2 mg. of Prolixin with no basis for doing so.  (Exhibit 8)   This augmented regiment continued for years.

32.     On January 3, 2006, Dr. Aqeel Khan changed the plaintiff's medication with no basis for doing so.  He prescribed 3 mg. of Risperidone at 6:00 p.m. with 2 mg. of Prolixin.  (Exhibit 9)

33.     By April 28, 2006, plaintiff's entire demeanor had changed.  He refused to talk, and failed to make eye contact.  He was "guarded with a defensive stance."  (Exhibit 10)

34.     By May 24, 2006, plaintiff was transferred to the D-wing for throwing his tray at another inmate.  The plaintiff was angry for no reason.  His hygiene was worsening, and he reported

having paranoia.  With the plaintiff already reacting poorly to the new regiment, Dr. Khan increased the plaintiff's dose of Risperidone from 3 mg. to 4 mg., again with no basis.  (Exhibit 11)

35.       On July 13, 2006, the plaintiff remained "distressful, guarded and suspicious."  His sleep and appetite, which had been good up until then, were only fair.  Dr. John Dorn changed the plaintiff's regiment to 3 mg. of Risperidone twice a day and 5 mg. of Haldol.  There was no basis for this increase.  (Exhibit 12)

36.       By August 1, 2006, the plaintiff displayed "a case of active psychosis, including most notably, thought blocking and some paranoia."  The plaintiff appeared to be responding to internal stimuli.  His mood was dysphoric.  At this point, Dr. Dorn increased the plaintiff's dosage of Risperidone to the maximum amount, 4 mg. twice a day.  (Exhibit 13)

37.       On August 29, 2006, Dr. Dorn noted that the plaintiff remained persistently psychotic.  So he doubled the plaintiff's dosage of Haldol, and added a 1 mg. dose of Cogentin twice a day.  (Exhibit 14)

38.       On September 26, 2006, Dr. Dorn added 50 mg. of Haldol Decanoate to the plaintiff's psychotic drug cocktail because the plaintiff appeared "to have tolerated a trial of Haldol 5 mg q.p.m. without incident."  (Exhibit 15)

39.       On October 24, 2006, the plaintiff continued to demonstrate symptoms of schizophrenia.  So Dr. Dorn doubled the plaintiff's dosage of Haldol Decanoate to 100 mg.  He also introduced .5 mg. of Klonopin enforced with 2 mg. of Prolixin.  (Exhibit 16)

40.       On November 11, 2006, Dr. Dorn changes the plaintiff's regiment again.  He reduces the plaintiff's dosage of Risperdal to 6 mg. enforced with 5 mg. of Prolixin.  He cut the Haldol Decanoate to 50 mg., and discontinued the Klonopin.  He left the plaintiff on Cogentin at 1 mg.  (Exhibit 17)

41.       Dr. Jamie Chess checked the plaintiff's cell on December 1, 2006, and found the plaintiff sitting on his bed rocking back and forth, refusing to talk.  The plaintiff was uncooperative, incoherent, and avoided eye contact.  His cell was messy.  (Exhibit 18)  These symptoms are normative for an abused person.

42.     On December 12, 2006, Dr. Lifchitz noted the plaintiff standing in the middle of his room with a blanket wrapped around him.  The plaintiff's regiment remained the same.  (Exhibit 19)

43.     As noted by Dr. Lifchitz on May 16, 2007, the plaintiff continued to sit on his bed wrapped in a blanket rocking back and forth.  (Exhibit 20)

44.     On June 13, 2007, the plaintiff continued to lie in his bed wrapped in a blanket, but this time wearing a hat.  (Exhibit 21)

45.     On July 10, 2007, the plaintiff indicated that he did not want to take his medications.  (Exhibit 22)  This was non-normative behavior for a psychotic person.  Typically, psychotic people *want* their medications, because the medications ward off the voices and hallucinations they experience.

46.     On December 20, 2007, plaintiff was clear that he would choose not to continue with medications.  (Exhibit 23)

47.     The Plaintiff was released from Dixon on or about December 28, 2007.  (Exhibit 24) He was missing until February 19, 2008, because he no longer had the mental capacity to find his way home.

48.     On February 19, 2008, he was re-arrested for violating his parole.  By this time, he did not understand his parole responsibilities.  He was released again on March 4, 2008.  (Exhibit 1)

49.     Today, the plaintiff lives in Chicago with his family.  But as a result of the forced-medications the plaintiff has had to endure, he is now on medications for the rest of his life.  (Exhibit 25)

50.     The plaintiff now takes 50 mg. of Fenofibrate, 20 mg. of Olanzapine and 5 mg. of Oxybutynin daily along with omega-3 fish oil three times daily.

51.     Omega-3 fish oils reduce the damage psychotropic drugs do to the brain (Exhibit 26), but over the years the plaintiff had been forced-medicated, he had not had the benefit of these oils.

52.     The foregoing information has only recently been discovered.  Pursuant to the Authorization for Release of Offender Mental Health or Substance Abuse Treatment Information

form signed by the plaintiff on May 3, 2012, (See Exhibit 2), several years' worth of mental health information was made available to the plaintiff for the first time. However, for whatever reason, not all of the plaintiff's medical information has been made available to him, even though his complete medical record should have been permanently stored. (Exhibit 32).

57.     As a direct and proximate result of the acts of Defendants, acts that violated clearly established and well settled federal constitutional rights, the Plaintiff suffered the following injuries and damages:

a.      Violation of his constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment when the Defendants force-medicated the Plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

b.      Violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process by Defendants depriving him of his right to proper medical care by force-medicating the Plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

c.      As a direct result of the negligent actions of Drs. Dorn, Khan and Urubusi, as well as the unknown psychiatrists and psychologists at the Dixon and Menard Correctional Centers, the plaintiff will be required to take medications to treat schizophrenia for the rest of his life.

58.     At all relevant times, Defendants were acting under color of law and under color of authority as a prison warden, employee, or agent or servant of the State of Illinois.

## COUNT I

*42 U.S.C. §1983 Against Defendant Howard A. Peters*

59.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-58.

60.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Howard A. Peters for violation of his constitutional rights under color of law and/or color of authority in that Defendant Peters knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendant Peters knew or willfully refused to see that the wardens in the IDOC allowed the psychologists and psychiatrists in their employ, including those at the Menard Correctional Facility, to use psychotropic drugs to control the behavior of inmates from 1991 through 1995, resulting in the forced-medicating of the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

61.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT II

*42 U.S.C. §1983 Against Defendant Odie Washington*

62.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-61.

63.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Odie Washington for violation of his constitutional rights under color of law and/or color of authority in that Defendant Washington knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendant Washington knew or willfully refused to see that the wardens in the IDOC allowed the psychologists and psychiatrists in their employ, including those at the Dixon and Menard Correctional Facilities, to use psychotropic drugs to control the behavior of inmates from 1995 through 1999, resulting in the forced-medicating of the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

64.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and

unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT III

*42 U.S.C. §1983 Against Defendant Donald N. Snyder, Jr.*

65.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-64.

66.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Donald N. Snyder, Jr. for violation of his constitutional rights under color of law and/or color of authority in that Defendant Snyder knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendant Snyder knew or willfully refused to see that the wardens in the IDOC allowed the psychologists and psychiatrists in their employ, including those at the Dixon Correctional Facility, to use psychotropic drugs to control the behavior of inmates from 1999 through 2003, resulting in the forced-medicating of the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

67.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT IV

*42 U.S.C. §1983 Against Defendant Ernesto Velasco*

68.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-67.

69.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Ernesto Velasco for violation of his constitutional rights under color of law and/or color of authority in that Defendant Velasco knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendant Velasco knew or willfully refused to see that the wardens in the IDOC allowed the psychologists and psychiatrists in their employ, including those at the Dixon

Correctional Facility, to use psychotropic drugs to control the behavior of inmates from February, 2003 through March, 2003, resulting in the forced-medicating of the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

70.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT V

*42 U.S.C. §1983 Against Defendant Roger E. Walker, Jr.*

72.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-71.

73.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Roger E. Walker, Jr. for violation of his constitutional rights under color of law and/or color of authority in that Defendant Walker knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendant Walker knew or willfully refused to see that the wardens in the IDOC allowed the psychologists and psychiatrists in their employ, including those at the Dixon Correctional Facility, to use psychotropic drugs to control the behavior of inmates from 2003 through 2009, resulting in the forced-medicating of the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

74.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT VI

*42 U.S.C. §1983 Against Defendants George Welborn and Tom Page, Wardens of the Menard Correctional Facility from 1991 through 1995*

75.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-74.

76.      Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendants George Welborn and Tom Page, Wardens of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

77.      Defendants Welborn and Page knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendants Welborn and Page knew or willfully refused to see that the psychologists and psychiatrists in their employ at the Menard Correctional Facility were using psychotropic drugs to control the behavior of inmates from 1991 through 1995, in particular, force-medicating the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

78.      All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT VII

*42 U.S.C. §1983 Against Defendants Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes and Nedra Chandler, Wardens of the Dixon Correctional Facility from 1996 through 2007*

79.      Plaintiff re-alleges and incorporates by reference ¶¶ 1-78.

80.      Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendants Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes and Nedra Chandler, Wardens of the Dixon Correctional Facility from 1996 through 2007 for violation of his constitutional rights under color of law and/or color of authority.

81.      Defendants Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes and Nedra Chandler knew or should have known that psychotropic drugs were in wide use throughout the nation to control behavior in people from schools to prisons and nursing homes. Defendants Keith Nelson, LaMark Carter, Tom Roth, Jerry Sternes and Nedra Chandler knew or willfully refused to

see that the psychologists and psychiatrists in their employ at the Dixon Correctional Facility were using psychotropic drugs to control the behavior of inmates from 1996 through 2007, in particular, force-medicating the plaintiff without medical justification as a punishment to the point that he is now permanently mentally ill.

82.     All of this was done in violation of the plaintiff's constitutional right under the Eighth Amendment of the Constitution of the United States of America to be free from cruel and unusual punishment and in violation of his constitutional right under the Fourteenth Amendment of the Constitution of the United States of America to due process.

## COUNT VIII

*42 U.S.C. §1983 Against Defendant Unknown Psychologist of the Menard Correctional Facility from 1991 through 1995*

83.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-82.

84.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Unknown Psychologist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT IX

*42 U.S.C. §1983 Against Defendant Unknown Psychiatrist of the Menard Correctional Facility from 1991 through 1995*

85.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-84.

86.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Unknown Psychologist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT X

*42 U.S.C. §1983 Against Defendant Unknown Psychologist of the Dixon Correctional Facility from 1996 through 2007*

87.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-86.

88.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Unknown Psychiatrist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XI

*42 U.S.C. §1983 Against Defendant Unknown Psychiatrist of the Dixon Correctional Facility from 1996 through 2007*

89.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-88.

90.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant Unknown Psychiatrist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XII

*42 U.S.C. §1983 Against Defendant Peter Swire, the administrator of the Estate of Dr. John Dorn*

91.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-90.

92.     Plaintiff claims damages under 42 U.S.C. §1983 for the injuries set forth above against Defendant John Dorn for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XIII

*Medical Malpractice Against Defendant Unknown Psychologist of the Menard Correctional Facility from 1991 through 1995*

93.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-92.

94.     Plaintiff claims damages under Medical Malpractice for the injuries set forth above against Defendant Unknown Psychologist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XIV

*Medical Malpractice Against Defendant Unknown Psychiatrist of the Menard Correctional Facility from 1991 through 1995*

95.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-94.

96.     Plaintiff claims damages under Medical Malpractice for the injuries set forth above against Defendant Unknown Psychologist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XV

*Medical Malpractice Against Defendant Unknown Psychologist of the Dixon Correctional Facility from 1996 through 2007*

97.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-96.

98.     Plaintiff claims damages under Medical Malpractice for the injuries set forth above against Defendant Unknown Psychiatrist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XVI

*Medical Malpractice Against Defendant Unknown Psychiatrist of the Dixon Correctional Facility from 1996 through 2007*

99.     Plaintiff re-alleges and incorporates by reference ¶¶ 1-98.

100.    Plaintiff claims damages under Medical Malpractice for the injuries set forth above against Defendant Unknown Psychiatrist of the Menard Correctional Facility in 1991 through 1995 for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XVII

*Medical Malpractice Against Defendant Peter Swire, the administrator of the Estate of Dr. John Dorn*

101.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-100.

102.    Plaintiff claims damages under Medical Malpractice for the injuries set forth above against Defendant John Dorn for violation of his constitutional rights under color of law and/or color of authority.

## COUNT XVIII

*Respondeat Superior of the Menard Correctional Facility*

103.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-102.

104.    Defendant Menard Correctional Facility is liable for the actions committed against Plaintiff by various named and unnamed defendants who carried out the policies of the facility.  The Menard Correctional Facility employed the various named and unnamed defendants who carried out the policies of the facility, and committed the violations of Plaintiff's rights while acting within the scope of their employment.

## COUNT XIX

*Respondeat Superior of the Dixon Correctional Facility*

105.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-104.

106.    Defendant Dixon Correctional Facility is liable for the actions committed against Plaintiff by various named and unnamed defendants who carried out the policies of the facility.  The Dixon Correctional Facility employed the various named and unnamed defendants who carried out the policies of the facility, and committed the violations of Plaintiff's rights while acting within the scope of their employment.

## COUNT XX

*Respondeat Superior of the Illinois Department of Corrections*

107.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-106.

108.     Defendant Illinois Department of Corrections is liable for the actions committed against Plaintiff by various named and unnamed defendants who carried out the policies of the department.  The Illinois Department of Corrections employed the various named and unnamed defendants who carried out the policies of the facility, and committed the violations of Plaintiff's rights while acting within the scope of their employment.

## COUNT XXI

*745 ILCS §10/9-102 Against the Illinois Department of Corrections*

109.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-108.

110.    Illinois Department of Corrections is a necessary party in order to indemnify the Dixon and Menard Correctional Facilities.

## COUNT XXII

*745 ILCS §10/9-102 Against the State of Illinois*

111.    Plaintiff re-alleges and incorporates by reference ¶¶ 1-110.

112.    The State of Illinois is a necessary party in order to indemnify Illinois Department of Corrections as well as the Dixon and Menard Correctional Facilities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Enter judgment in favor of Plaintiff and against Defendants;

B.    Enter an order declaring Defendants' conduct unconstitutional;

C.    Award Plaintiff compensatory and punitive damages against Defendants in the amount of $20,000,000.00;

D.    Award Plaintiff reasonable fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law;

E.    Enter a permanent injunction requiring Defendants Dixon and Menard Correctional Facilities and IDOC to adopt appropriate policies related to the hiring, training and supervision of its employees;

F.    Enter a permanent injunction requiring Defendants Dixon and Menard Correctional Facilities and IDOC to adopt appropriate policies and guidelines related to the administering of psychotropic drugs;

G.    Grant to Plaintiff such other and further relief as may be just and proper under the circumstances, including, but not limited to, appropriate injunctive relief.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to the Seventh Amendment to the Constitution of the United States, as to all claims for damages.


Respectfully submitted,

  /s/Larry Redmond
Larry Redmond
11747 S. Longwood Dr.
Chicago, Illinois 60643
773-733-0830
Lredmond3@juno.com
Attorney #6192358