IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD PLUMMER,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE WELBORN, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 13 C 8253<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Plummer ("Plummer"), a former inmate of both the Menard and Dixon Correctional Facilities, sued numerous Defendants who are or were agents of those facilities, bringing claims for violation of his constitutional rights and for medical malpractice under Illinois law. Defendants George Welborn, Tom Page, Keith Nelson, Tom Roth, Jerry Sternes, and Nedra Chandler, all former Wardens of the correctional facilities ("the Wardens"), have moved to dismiss Plummer's claims against them. Defendant Peter Swire ("Swire"), the Administrator of the estate of the now-deceased Doctor John Dorn ("Dorn"), has also moved to dismiss the claims against Dorn's estate (Dorn was a staff psychiatrist at Dixon Correctional Facility in 2006). For the reasons stated herein, the Court grants the Wardens' Motion to Dismiss [ECF No. 122], and grants

in part and denies in part Swire's Motion to Dismiss [ECF No. 102].

## I. <u>BACKGROUND</u>

This is Plummer's Second Amended Complaint, after the Court twice dismissed certain of his claims as to various other Defendants (ECF Nos. 49 and 89). After being convicted of murder in state court, Plummer served parts of his sentence at both the Menard Correctional Center and the Dixon Correctional Center in Illinois. He claims that during his time at these facilities, he was force-medicated by the staff and suffered emotional and physical harm as a result. Plummer was diagnosed with schizophrenia, although it is unclear when the condition first developed. He claims he developed psychiatric disorders as a result of the medications administered to him at Menard and Dixon. He further claims that, from roughly 1995 to his release from Dixon in 2007, medical staff forced him to take drugs as a form of punishment, and that staff repeatedly changed or increased his drug regimen without any medical basis. Staff also placed him in solitary confinement, he claims, subjecting him to long-term sensory deprivation.

The only named individual in the Complaint who directly administered drugs is Doctor John Dorn. Throughout 2006, Dorn changed Plummer's drug regimen six times, at least once without any medical basis. Doctor Dorn is recently deceased; Plummer

now names the Administrator of his estate in the suit, Peter Swire. Plummer has also sued the former Wardens of Menard and Dixon who were responsible for the facilities during the time periods he was an inmate. He filed this suit under Section 1983, arguing that his forced medication violated his rights to due process under the Fourteenth Amendment and his right to be free of cruel and unusual punishment under the Eight Amendment. He also includes a state claim for medical malpractice against Dorn's estate under Illinois law.

## II. WARDENS' MOTION TO DISMISS

The only claims against the Wardens are for constitutional violations pursuant to Section 1983. The Wardens argue that the applicable statute of limitations has run, and so the claims against them in their individual capacities must be dismissed. The Court agrees. A statute of limitations affords the Wardens an affirmative defense, and the Court usually does not entertain an affirmative defense on a motion to dismiss under Rule 12(b)(6). However, when the facts are clear on the face of a plaintiff's complaint that the applicable claims are time barred, dismissal under Rule 12(b)(6) is appropriate. *See, Indep. Trust Corp. v. Stewart Info. Servs.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009)).

The Court looks to the forum state's statute of limitations governing personal injury claims in order to determine the relevant time limit for bringing a Section 1983 action. *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998). Illinois law dictates the statute of limitations is two years. *See, id*. (citing 735 ILCS § 5/13-202). Plummer filed his first Complaint on November 17, 2013. All relevant conduct by the Wardens took place prior to 2008, so at first glance, it would appear that all Section 1983 claims are time barred. However, in order to give Plummer every benefit of the doubt, the Court assumes (without deciding) that Plummer had a "legal disability" that would equitably toll the statute of limitations past 2008. *See, Basham v. Hunt,* 773 N.E.2d 1213, 1221 (discussing application of equitable tolling for legal disability under Illinois law). The assumption is reasonable given that Plummer suffers from mental illness and was initially homeless upon his release from prison.

In considering equitable tolling, the Court emphasizes that it is viewing the facts in the most favorable light to Plummer, choosing the latest possible date on which Plummer's claims could have accrued. The issue turns on when Plummer's legal disability was "removed" within the meaning of Illinois law. *See,* 735 ILCS § 5/13-211. Illinois law defines a legal disability as being "entirely without understanding or capacity to make or communicate decisions regarding [one's] person and

totally unable to manage [one's] estate or financial affairs." *Basham,* 773 N.E.2d at 1221. Plummer requested his partial medical records from the state, and he indicates that he received them on May 3, 2012. That was the day he discovered his injuries, by learning about the alleged abuse he endured while incarcerated. Plummer also stated in his initial Complaint that he began "preparing for the instant cause of action" some time prior to September 15, 2012, by requesting certain documentation from the prison system about policies and practices through the Illinois Freedom of Information Act. (ECF No. 1, Pl. Compl. ¶ 53).

Plummer's capacity to petition for his medical records and to file an Illinois FOIA request suggest that he was no longer suffering from a legal disability within the meaning of Illinois law by September 15, 2012. *Cf. Quinn v. Harris,* 230 Fed. Appx. 595, 597 (7th Cir. 2007) (affirming district court's refusal to apply equitable tolling for legal disability where plaintiff advocated for herself and sought legal representation). Besides, it would be illogical to toll the statute of limitations beyond the point at which the plaintiff begins prepping for litigation. The principle behind equitable tolling is to grant relief to a plaintiff who, because of disability or some other extraordinary circumstance, "cannot reasonably be expected to sue in time." *Miller v. Runyon,* 77 F.3d 189, 191

(7th Cir. 1996). By September 15, 2012, Plummer, by his own admission, knew of his injury, potential causes of action, and some likely defendants (even if he did not know those defendants by name – more on that later). Thus the latest possible date at which the statute of limitations could have been triggered is September 15, 2012.

Plummer filed his initial Complaint on November 17, 2013. So far, so good: that's roughly one year after the 2-year time limit would have commenced. But Plummer did not identify the individual Wardens by name in 2013. Instead, he named several "unknown wardens" in the Complaint. He did not identify them by name until his Second Amended Complaint, which he filed on September 28, 2015 – more than a year after the two-year statute of limitations had run. The Seventh Circuit has held definitively that the designation of "John Doe" defendants in a complaint will not toll the statute of limitations until a plaintiff can substitute a named defendant. *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978).

There is an exception to the rule in *Sassi* for instances in which defendants fraudulently conceal their identities from the plaintiff. In such a case, under Illinois law, the plaintiff must "set forth affirmative acts or words by the defendants which prevent[ed] him from discovering their identity. Mere silence of the defendant and the mere failure on the part of the

plaintiff to learn of a cause of action do not amount to fraudulent concealment." *Worthington v. Wilson,* 8 F.3d 1253, 1257 (7th Cir. 1993) (internal citations and quotations omitted). Plummer offers only the following explanation for his failure to name the Wardens in a timely fashion: "[I]t took the Attorney General's office from October 9, 2014, until September 10, 2015, to produce those names" (Pl. Resp. at pages 4-5). That explanation is deficient. And a request to the Illinois Attorney General for names on October 9, 2014 was already too late, coming more than 2 years after September 15, 2012.

The case for leniency on this issue might be stronger if Plummer were proceeding *pro se*. *See, Maclin v. Paulson,* 627 F.2d 83, 87-88 (7th Cir. 1980). But he has been represented by the same counsel since the day he filed his initial Complaint, and counsel has not offered the Court any explanation for his lack of diligence in ascertaining the Wardens' identities. Lack of diligence, besides, will not excuse untimely filing. *See, Worthington,* 8 F.3d at 1257. Moreover, this case does not involve unknown defendants whose identification depends in large part on a plaintiff's hazy memory; determining the identity of past high-level officials of two state-run correctional facilities should be a fairly straightforward matter. Because the Wardens were not named until more than two years after

September 15, 2012, the Court holds that the two-year statute of limitations has run on the Section 1983 claims against the Wardens in their individual capacities.

Plummer argues that the claims against the Wardens in their official capacities should survive, because the state has been a party to this action from the beginning and so was put on notice back in 2013. Plummer is correct that "an official capacity claim against an individual defendant constitutes a claim against the government entity itself." *Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir. 1997). And the relevant government entity in this case – the authority in charge of the correctional facilities – is indeed the State of Illinois, which Plummer has named persistently as a defendant throughout these proceedings. But as the Court explained in a prior opinion on this exact subject (*see,* ECF No. 89), the Eleventh Amendment bars claims for damages against the States. *See, Gossmeyer,* 128 F.3d at 495. And as to Plummer's repeated requests for injunctive relief against Illinois: the Court advises Plummer, for the second time (*see,* ECF No. 89) that there is nothing here to enjoin. Plummer is no longer incarcerated, and there are no allegations that state officials continue to harass or abuse him. The Court dismisses the claims against the Wardens in their official capacity as well.

### III.  <u>SWIRE'S MOTION TO DISMISS</u>

The Court now considers the claims against Dorn.  As an initial matter, Swire argues that Plummer's claims should be dismissed because, after Dorn's death on February 15, 2015, Plummer did not substitute Swire as the proper party within the time period set out in Federal Rule of Civil Procedure 25(a). Rule 25(a) requires that the motion for substitution of a deceased party be made within 90 days after notification of death; Plummer filed a Motion for Substitution approximately 124 days after Dorn's death was first suggested to the Court.

Swire's argument is unconvincing.  The Advisory Committee Notes to Rule 25 indicate that the Court may permit untimely motions for substitutions when the tardiness is the result of excusable neglect.  *See, Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1297 (7th Cir. 1993).  Plummer argues that the suggestion of death filed in this suit (*see,* ECF No. 55) was deficient in that it did not name a proper party to substitute. The Court believes Plummer's counsel diligently attempted to ascertain who to name in Dorn's place, given that he filed a Motion to Strike the suggestion of death due to the perceived deficiency.  That's enough to find that the failure to substitute Swire within 90 days was excusable; Rule 25(a) was not meant "to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted." *Continental*

*Bank, N.A.,* 10 F.3d at 1297 (internal citation and quotation omitted).

Swire also argues that Dorn was never served pursuant to Federal Rule of Civil Procedure 4(m), that Dorn's estate was served past Rule 4(m)'s 90-day window, and as such, that the Complaint should be dismissed pursuant to Rule 12(b)(5) for insufficient service of process. But Rule 4(m) also dictates that the Court must extend the time allowed if there was good cause for untimely service. As to Dorn, the record indicates that Plummer diligently attempted to serve him but had difficulty tracking him down, perhaps due to an alias. Roughly two months after an alias summons issued on December 16, 2014, Dorn passed away. Then Plummer had to determine who to substitute (and serve) in Dorn's place under Rule 25(a). The Court has already considered and excused the delay related to that issue. Even if the Court were inclined to dismiss for non-compliance with Rule 4(m), the rule indicates that the dismissal should be without prejudice in order to give the plaintiff another shot at proper service. Plummer already served Swire – his executed summons was returned on December 31, 2015. The Court thus declines to dismiss Plummer's claims pursuant to Rule 12(b)(5).

Turning to the merits, Plummer first claims that Dorn violated his right to be free from cruel and unusual punishment

under the Eighth Amendment. States have a duty to provide medical care to prison inmates, and "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment. *See, Duckworth v. Ahmad,* 532 F.3d 675, 678-79 (7th Cir. 2008) (internal quotation and citation omitted). To state a legally sufficient claim, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Id*. at 679 (citation omitted). Deliberate indifference is more than negligence but "something less than purposeful." *Id*. A medical professional, specifically, exhibits deliberate indifference if he is aware of and ignores an excessive risk to an inmate's health. *See, id*.

Plummer's allegations easily meet the deliberate indifference standard. He suffers from at least one serious medical condition (schizophrenia), and he maintains that Dorn not only forcibly medicated him, but did so without any medical basis. He also claims generally (although not specifically as to Dorn) that changes in medication were punitive, not medical. The forced medication exacerbated Plummer's psychiatric disability. He bolsters these claims with references to how and when his treatment regimen changed while incarcerated. Given that the Court must accept the allegations as true at this

stage, Plummer has provided more than enough to state a legally sufficient claim that Dorn violated his Eighth Amendment rights.

Plummer also contends, briefly, that Dorn violated his right to due process under the Fourteenth Amendment. The Court assumes that Plummer implicates the Fourteenth Amendment to the extent that it extends the Eighth Amendment's protections to pretrial detainees; the Eighth Amendment, by contrast, applies only to convicted prisoners. *See, Williams v. Rodriguez,* 509 F.3d 392, 401 (7th Cir. 2007). But there are no allegations in Plummer's Complaint specific to pretrial detention. Dorn's alleged conduct took place well after Plummer's conviction and imprisonment. If Plummer invoked the Fourteenth Amendment for different reasons, unrelated to the Eighth Amendment and his allegations of deliberate indifference, the purpose is lost on the Court. The claim is either inapplicable or fails for lack of specificity. The Court dismisses it accordingly.

The final claim against Dorn's estate is for medical malpractice under Illinois law. In an effort to reduce frivolous medical malpractice lawsuits, Illinois requires plaintiff's counsel to file an affidavit stating that he has consulted with a qualified, licensed physician and that there is a reasonable and meritorious cause for filing the suit. *See,* 735 ILCS § 5/2-622; *see also, Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir. 2000). The physician's written report on the case

also must be included with the attorney affidavit. Swire argues that the claim should be dismissed because Plummer failed to attach a certificate of merit with the Complaint.

The Court dismissed the same medical malpractice claims as to other Defendants over a year ago due to Plummer's failure to attach the certificate of merit. At that time, the Court indicated that the dismissal was without prejudice and that Plummer may have the right to refile if he could obtain the required certificate (ECF No. 65, Trans. at pgs. 2-5, 8). Plummer filed his most recent Amended Complaint on September 28, 2015, and it still lacks the certificate. Plummer's response to Swire's Motion to Dismiss (*see,* ECF No. 128), contains a letter from a licensed psychiatrist who reviewed Plummer's medical records. However, as a certificate of merit, the letter is deficient.

First, the letter was not attached to the Complaint as required by the statute. *See,* 735 ILCS § 5/2-622(a). Second, there is no actual affidavit from Plummer's counsel stating that he consulted and reviewed the facts of the case with the physician. Instead, the filing is just the physician's own observations about Plummer's medical records from Dixon from approximately 2004 to 2007 (note that those years cover all alleged conduct perpetrated by Dorn). The statute requires

affirmative representations by the *attorney*, not just the physician. *See, id*.

Finally, the letter actually does not state that the physician believes there is a reasonable and meritorious cause for the filing of the suit. That's the whole point behind the law, but such a representation is missing from the letter. And in fact, the letter opens with the physician's caveat that he has not interviewed Plummer, so his "perpective [*sic*] may be skewed" (Pl. Resp. Ex. 2). Counsel's failure to make his client available to the physician for an interview cannot be laid at the feet of the Defendant. Counsel has known, or should have known, that he needed this certificate for a valid malpractice claim since initiating the litigation in 2013. The Court has dismissed once without prejudice and provided Plummer the opportunity to cure the procedural defect already. He has failed to do so. The medical malpractice claim against Dorn's estate is dismissed with prejudice. Lastly, the official capacity claim against Dorn's estate is denied for the same reasons the Court denied the official capacity claim against the Wardens.

## IV. <u>CONCLUSION</u>

To summarize, the Court dismisses all claims against the Wardens, and it dismisses all claims against Dorn's estate with the exception of the Eighth Amendment claim. The Court thus

grants the Wardens' Motion to Dismiss [ECF No. 122] in its entirety, and grants in part and denies in part Swire's Motion to Dismiss [ECF No. 102].

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Dated: May 20, 2016